## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Norfolk Division

NORMAN KEVIN WILKERSON, #1007354,

Petitioner,

v.                                                                    ACTION NO.   2:15cv396

HAROLD W. CLARKE,
Dir of VDOC,

Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Norman Kevin Wilkerson ("Wilkerson"), a state prisoner, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   ECF No. 49.   For the reasons discussed below, and pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is hereby RECOMMENDED that respondent's motion to dismiss the petition (ECF No. 55) be GRANTED, and the petition for a writ of habeas corpus (ECF No. 49) be DENIED and DISMISSED WITH PREJUDICE.

### I.  STATEMENT OF THE CASE

**A.     Background**

      **1.     Wilkerson's Trial and Direct Appeal**

On March 11, 2013, in the Circuit Court of Chesterfield County (the "trial court"), a jury found Wilkerson guilty of distribution of cocaine on August 4, 2011, and possession of cocaine, Oxycodone, and marijuana on March 7, 2012.[1]   *See* Sentencing Order, *Commonwealth v.*

---

[1] Wilkerson was indicted on June 6, 2012.   *Commonwealth v. Wilkerson*, CR12F01449-01 through CR12F01449-03, CR12M01450-01 (Va. Cir. Ct. June 6, 2012).   The trial was held on March 11, 2013, after the trial court granted several defense motions and continued the trial twice.

*Wilkerson*, CR12F01449-01 through CR12F01449-03, CR12M01450-01 (Va. Cir. Ct. Sept. 25, 2013), ECF No. 57-1. Wilkerson was sentenced on September 18, 2012 to "[five] years and [twelve] months" in prison. *Id.*

The Court of Appeals of Virginia denied Wilkerson's appeal initially on April 23, 2014, and a three-judge panel of the court denied his appeal on July 2, 2014. *Wilkerson v. Commonwealth*, Record No. 1994-13-2 (Va. Ct. App.), ECF Nos. 57-2, 57-3.

In his petition for appeal to the Supreme Court of Virginia, Wilkerson alleged: (a) the trial court violated his Sixth Amendment right to counsel by forcing him to trial without his counsel of choice; (b) through (d) the evidence was insufficient to convict him of the charges; (e) the trial court erred in denying Wilkerson's inquiry into the validity of the seizure warrant for his vehicle; (f) the trial court abused its discretion by admitting evidence obtained through the execution of a defective seizure warrant; and (g) the trial court erred in finding probable cause for the search and seizure of Wilkerson's vehicle given that the source of information on which the Sheriff relied in searching and seizing Wilkerson's vehicle was not a credible person. *Wilkerson v. Commonwealth*, Record No. 141138 (Va. July 22, 2014). The Supreme Court of Virginia refused Wilkerson's petition for appeal on January 21, 2015. *Wilkerson v. Commonwealth*, Record No. 141138 (Va. Jan. 21, 2015), ECF No. 57-4.[2] The United States Supreme Court denied Wilkerson's petition for a writ of certiorari on April 27, 2015. *Wilkerson v. Virginia*, No. 14-8632 (April 27, 2015).[3]

---

[2] On January 14, 2015, Wilkerson filed a petition for a writ of mandamus in the Supreme Court of Virginia, which was dismissed on May 5, 2015. *Wilkerson v. Davenport*, Record No. 150162 (Va. May 5, 2015).

[3] On September 17, 2015, Wilkerson filed a motion to vacate judgment in the Circuit Court for Chesterfield County pursuant to Virginia Code § 8.01-428, which was denied on November 5, 2015. *Commonwealth v. Wilkerson*, CR12F01449-01 through CR12F01449-03, CR12M01450-01

## 2.      Wilkerson's State Habeas Petition

On July 28, 2015, Wilkerson timely filed a petition for a writ of habeas corpus in the Supreme Court of Virginia.  *Wilkerson v. Clarke*, Record No. 151247 (Va. July 28, 2015).[4]  In a four-page form petition, filed on August 7, 2015, Wilkerson alleged the following claims:

(a)      Trial counsel was ineffective for failing to request an informant instruction;

(b)      Trial counsel was ineffective for failing to file [a] motion to suppress the evidence obtain[ed] from a defective seizure information;

(c)      Trial court erroneously denied [his] motion for continuance and denial of [his] motion to retain counsel of choice;

(d)      Trial court lacked subject matter jurisdiction over the place where the alleged August 4, 2011 crime occurred [] rendering [his] convictions void; and

(e)      Prosecution knowingly and intentionally used evidence obtained from a defective seizure warrant.

*Wilkerson v. Clarke*, Record No. 151247 (Va. Aug. 7, 2015) ("State Pet.").   The Director of the

---

(Va. Cir. Ct. Sept. 17, 2015).

[4] In this 14-page handwritten petition, Wilkerson alleged:

(1)      This court should follow several circuits in holding that trial counsel was ineffective for failing to request an informant instruction;

(2)      Trial court did not have personal jurisdiction or subject matter jurisdiction over the place where the alleged August 4, 2011 crime occurred because the alleged August 4, 2011 drug transaction occurred in the City of Richmond, Virginia (Tr. 81, 18–21), not Chesterfield County, Virginia;

(3)      Trial counsel representation fell below the objective standard of reasonableness when he failed to file a motion to suppress the evidence he knew was obtain[ed] from a defective search and seizure information (Tr. 116–117) in violation of the Sixth Amendment of the United States Constitution.

*Wilkerson v. Clarke*, No. 151247 (Va. July 28, 2015).

3

Virginia Department of Corrections filed a motion to dismiss the petition on November 6, 2015 ("Mot. to Dismiss State Pet."), and Wilkerson replied to the motion to dismiss ("State Reply") on November 19, 2015. *Wilkerson v. Clarke*, Record No. 151247 (Va.).

After considering the petition filed August 7, 2015 and the respondent's motion to dismiss, the Supreme Court of Virginia dismissed the petition on May 12, 2016. ECF No. 57-5 ("State Hab. Op."). The court found that Wilkerson failed to show, with respect to claim (a), that counsel's performance was deficient or that there was a reasonable probability that, but for counsel's alleged error, the result of Wilkerson's trial would have been different. State Hab. Op. 1–2.

With respect to claims (b) and (e), the court found Wilkerson failed to identify how the seizure information or search warrant were defective, identify what evidence was seized, or state a legal basis for suppressing the evidence. State Hab. Op. 2–3 (citing *Penn v. Smyth*, 49 S.E.2d 600, 601 (Va. 1948)). The court dismissed claims (b) and (e) because Wilkerson failed to provide factual support for his conclusions or opinions. *Id.*

The court dismissed claim (c) because the issue of Wilkerson's motion for a continuance to obtain counsel of his choice was raised and decided in the trial court and on direct appeal, and could not be raised in a habeas corpus petition. State Hab. Op. 2 (citing *Henry v. Warden*, 576 S.E.2d 495, 496 (Va. 2003)).

The court dismissed claim (d) as an issue of venue, not jurisdiction (citing Virginia Code § 19.2-244), which could have been raised during Wilkerson's direct appeal and was not cognizable in a petition for a writ of habeas corpus. State Hab. Op. 2 (citing *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974)).

4

## B.      Wilkerson's Federal Habeas Filings and the Grounds Alleged

Wilkerson submitted three *pro se* petitions pursuant to 28 U.S.C. § 2254 in this Court. ECF No. 1 (2:15cv396), ECF No. 1 (2:15cv445), ECF No. 1 (2:15cv530). Following Wilkerson's request, these petitions were consolidated into one action proceeding as Action No. 2:15cv396, and on February 2, 2016, Wilkerson filed an amended petition encompassing all claims. ECF No. 16. The amended petition was dismissed without prejudice, on March 2, 2016, to allow Wilkerson to exhaust his state court remedies. ECF No. 20. Wilkerson appealed the dismissal order to the Fourth Circuit Court of Appeals on March 17, 2016. ECF No. 22.

After the Supreme Court of Virginia dismissed his state habeas petition on May 12, 2016, Wilkerson filed a motion for reconsideration of this Court's dismissal without prejudice on May 20, 2016. ECF No. 26. The motion for reconsideration was denied on June 1, 2016. ECF No. 27. Wilkerson filed, on June 23, 2016, a motion to vacate judgment and reinstate his petition pursuant to Rule 60(b), and a motion for release pending appellate review. ECF Nos. 28, 29. Both motions were denied on August 3, 2016. ECF Nos. 33, 34. Wilkerson appealed the denials to the United States Court of Appeals for the Fourth Circuit. ECF Nos. 30, 35 (No. 16-4518). On October 28, 2016, the Fourth Circuit ruled that this Court's dismissal of Wilkerson's petition without prejudice was not a final, appealable order. *Wilkerson v. Clarke*, Record Nos. 16-4518, 16-6425 (4th Cir. Oct. 28, 2016), ECF No. 42. The Fourth Circuit dismissed Wilkerson's appeals for lack of jurisdiction and remanded the case to this Court with instructions to allow Wilkerson to reinstate his case and file an amended section 2254 petition. *Id.*

Wilkerson filed a second amended petition in this Court on December 30, 2016. ECF No. 49. The second amended petition consists of a 12-page "addendum" (ECF No. 49 at 1–12), the

5

amended petition previously filed on February 2, 2016 (ECF No. 49 at 13–27), and a memorandum with attachments that Wilkerson filed in his appeal of this Court's orders to the Fourth Circuit (ECF No. 49 at 28–59).   In this second amended petition, Wilkerson alleges the following grounds:

(1)(a)  "Trial court lacked jurisdiction and/or venue over the subject matter of the place where the August 4, 2011 alleged crime occurred" (ECF No. 49 at 17),

(1)(b)  "trial counsel was . . . ineffective for failing to make a proper objection to the improper jurisdiction" (ECF No. 49 at 3);

(2)(a)  "[Wilkerson's] conviction []was obtained based upon known perjured testimony" (ECF No. 49 at 19);

(2)(b)  "trial counsel was ineffective for failing to request an informant instruction" (ECF No. 49 at 4);

(2)(c)  "trial counsel was ineffective for failing to put[] forth the facts pertaining to the confidential informant[']s prior criminal history" (ECF No. 49 at 4);

(3)  "Trial court deprived [Wilkerson] of [his] fundamental right to counsel of [his] choice" (ECF No. 49 at 20); and,

(4)  "Counsel was ineffective for failing to file a motion to suppress" (ECF No. 49 at 22).

ECF No. 49.

On February 17, 2017, Harold W. Clarke, Director, Virginia Department of Corrections ("Director"), filed an answer, as well as a motion to dismiss the petition.   ECF Nos. 55–57. Wilkerson responded to the motion to dismiss on March 2, 2017.   ECF No. 60.

6

## II. **STATEMENT OF FACTS**

According to the Court of Appeals of Virginia, the evidence presented at Wilkerson's trial,

when viewed in the light most favorable to the Commonwealth, established the following:

> [O]n August 4, 2011, David Jackson ("Jackson") was working as a confidential informant for the Chesterfield County Police Department. Jackson contacted [Wilkerson] and arranged to buy one ounce of cocaine for $1,200 in the parking lot of a Wendy's restaurant. Detectives Christopher Humphries ("Humphries") and Thomas Kline ("Kline") of the Chesterfield County Vice-Narcotics Unit provided Jackson with the necessary funds for the transaction.

> After being equipped with a transmitter wire, Jackson went to the Wendy's parking lot to wait for [Wilkerson] while Humphries and Kline conducted surveillance from across the street. Shortly thereafter, [Wilkerson] arrived in a silver 2005 Chrysler 300 sedan. Jackson and [Wilkerson] met briefly, during which time both Humphries and Kline testified that they observed [Wilkerson] distribute cocaine to Jackson. [Wilkerson] was not arrested at this time.

> Seven months later, on March 7, 2012, Humphries obtained a seizure warrant on [Wilkerson's] Chrysler sedan as it was suspected of being used in drug trafficking. Humphries and Kline then located the Chrysler at a Shell gas station, being operated by [Wilkerson] with [Wilkerson's] wife in the front passenger seat. After securing the vehicle's keys, Kline conducted a search of the vehicle's interior before seizing it in accordance with the Chesterfield Police Department's standard operating procedure. Inside the center console, Kline located three bags of cocaine, half an Oxycodone pill, and an empty cigarette pack containing three bags of marijuana. Kline and Humphries subsequently approached [Wilkerson] to place him under arrest. As they were handcuffing [Wilkerson], he pulled a bag of twelve Oxycodone pills out of his right pocket.

> On June 6, 2012, [Wilkerson] was indicted on one count of distribution of cocaine, one count of possession of cocaine with the intent to distribute, one count of possession of Oxycodone with the intent to distribute, and one count of possession of marijuana. [Wilkerson] retained counsel to represent him, and his trial was set for September 4, 2012. On the date of trial, however, [Wilkerson] moved for a continuance and for his retained counsel to withdraw. The motions were granted, and [Wilkerson's] trial was continued to December 11, 2012. On that date, however, [Wilkerson] moved for a jury trial, and the case was further continued to March 11, 2013.

> On March 11, 2013, [Wilkerson] entered pleas of "not guilty" to all the charges against him and represented to the trial court that he was ready to proceed with trial, having had sufficient time to speak with his attorney about the charges against him. Shortly thereafter, however, [Wilkerson] moved for a continuance so that he could

7

seek new counsel, stating that he "really [hasn't] consulted with [his] counsel the way that [he] should have." [Wilkerson's] trial counsel, while supporting [Wilkerson's] motion for a continuance, represented to the trial court that he had met with [Wilkerson] at least eight times and was ready to proceed with the trial.

The Commonwealth opposed [Wilkerson's] motion for a continuance, noting that [Wilkerson's] case was "somewhat old" and that if the motion was granted, the Commonwealth would have to subpoena its witnesses for a third time. The trial court denied [Wilkerson's] motion and proceeded with trial.

Testifying on his own behalf, [Wilkerson] denied meeting with Jackson in the Wendy's parking lot on August 4, 2011. [Wilkerson] also testified that other individuals, including his sons and friends, regularly use his car and that, consequently, it is full of "junk." He further stated that he did not inspect the console area of his car, where Kline found the cocaine, marijuana, and the Oxycodone pill. Upon cross-examination, [Wilkerson] admitted that he was previously convicted of nine felonies and, when asked if he knew how to procure illegal narcotics, testified that "the whole world know[s] how to do that."

At the close of evidence, the jury found [Wilkerson] guilty of all charges. [Wilkerson] moved to set aside the jury verdict as inconsistent with the evidence, but the trial court denied that motion.

*Wilkerson v. Commonwealth*, Record No. 1994-13-2 (Va. Ct. App. Apr. 23, 2014), ECF No. 57-2 at 1–3.

### III.   ANALYSIS

#### A.   Exhaustion and Procedural Default

Before addressing the merits of the habeas petition, the Court must confirm that Wilkerson exhausted his remedies in state court, *see* 28 U.S.C. § 2254(b), and that the claims were not procedurally defaulted in state court. *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). The exhaustion doctrine ensures that state courts have a meaningful opportunity to consider allegations of constitutional violations before presentation of such claims to a federal court. *Rose v. Lundy*, 455 U.S. 509, 515 (1982). The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va.

1991). Exhaustion may be achieved either through direct appeal or in post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

For the state court to have a meaningful opportunity to consider the claims, a petitioner must present the claims utilizing "the state's chosen procedural scheme." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994). Virginia's chosen procedural scheme requires prisoners to complete a standard form prescribed by statute. *See* Va. Code § 8.01-655. Further, Rule 5:7 of the Rules of the Supreme Court of Virginia "specifies the pleadings permitted in an original jurisdiction habeas corpus case: a verified petition and a responsive pleading. A memorandum of law may be filed *along with* either of these pleadings. Absent court authorization, no other documents may be filed." *Strong v. Johnson*, 495 F.3d 134, 139 (4th Cir. 2007). A filing that is not permitted by Rule 5:7 is not "properly before the Supreme Court of Virginia," and should not be considered during federal "review of the 'evidence presented in the State court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)(2)); *see also Waters v. Clarke*, No. 2:11cv630, 2012 WL 4498914, at *3–4 (E.D. Va. Sept. 28, 2012) (holding an opposition brief and attached exhibits, which were not referenced in the Supreme Court of Virginia's decision denying the state habeas petition, were not properly before the court for purposes of section 2254 review).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Under this doctrine, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A state procedural rule is adequate if it is

9

"regularly or consistently applied by the state courts." *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cir. 2007) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)).   A state procedural rule is independent "if it does not depend on a federal constitutional ruling." *Id.* (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).   "A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"  *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1).

A petitioner may overcome procedural default and obtain federal merits review, however, if he can "demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice." *Edwards v. Johnson*, No. 2:10cv339, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)).   The cause requirement compels a petitioner to demonstrate that "'some objective factor external to the defense impeded [his] efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   To establish prejudice, a petitioner must also establish that any errors at trial worked to his "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).   Similarly, a petitioner may avail himself of the "fundamental miscarriage of justice" exception by proffering new, reliable evidence sufficient to support a claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 314–15, 324 (1995); *see also United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) ("[I]n order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.").

1.    **Grounds 1(b), 2(a), and 2(c), Which Were Not Raised Before the Supreme Court of Virginia, are Simultaneously Exhausted and Procedurally Defaulted.**

Grounds 1(b), 2(a), and 2(c) of Wilkerson's federal petition are simultaneously exhausted and procedurally defaulted because Wilkerson has not fairly presented the claims to the Supreme Court of Virginia, and would now be barred from doing so.    Although Wilkerson challenged the trial court's jurisdiction to hear his case in his habeas petition to the Supreme Court of Virginia, that claim did not encompass his additional argument in ground 1(b) of his federal petition that his trial counsel was ineffective for failing to make a proper objection to the lack of jurisdiction.    *See* ECF No. 49 at 3.

Similarly, Wilkerson's argument to the Supreme Court of Virginia that trial counsel was ineffective for failing to seek a jury instruction regarding informant testimony did not include the argument in ground 2(c) of his federal petition that his counsel was ineffective due to his failure to examine the informant regarding his past criminal record.    *See* ECF No. 49 at 4.

In ground 2(a) of Wilkerson's federal petition, he alleges his conviction was obtained "based upon known perjured testimony."    ECF No. 49 at 19.    Wilkerson did not raise this argument on direct appeal or in his state habeas petition.    Wilkerson did, however, raise this argument in his reply to the respondent's motion to dismiss his state habeas petition.    *See* State Reply 3–4, *Wilkerson v. Clarke*, Record No. 151247 (Va. Nov. 19, 2015).    When denying Wilkerson's habeas petition, the Supreme Court of Virginia only considered Wilkerson's petition and the motion to dismiss, consistent with Rule 5:7 of the Rules of the Supreme Court of Virginia. *Wilkerson v. Clarke*, No. 151247 (Va. May 12, 2016).    Because there is no indication in the record that Wilkerson received authorization to file the reply, it was not properly before the Supreme Court of Virginia.    *See Strong*, 495 F.3d at 139.    Therefore, the claim was not fairly presented to the Supreme Court of Virginia and is not exhausted.    *See id.*

11

Accordingly, three arguments contained in Wilkerson's federal petition—that the trial counsel was ineffective both in failing to make a proper objection to the lack of jurisdiction, and in failing to examine the informant regarding his past criminal activity, and that the convictions were obtained based on perjured testimony—were not fairly and properly presented to the Supreme Court of Virginia.

The Court will ordinarily dismiss federal habeas petitions that include unexhausted claims without prejudice to allow the petitioner to present the unexhausted claims to the Supreme Court of Virginia. However, the Court will treat these three claims as exhausted because any attempt by Wilkerson to present these claims to the Supreme Court of Virginia now would be barred as a successive petition under Virginia Code § 8.01-654(B)(2). *See Dorsey v. Angelone*, 544 S.E.2d 350, 352 (Va. 2001); *see also Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."). Furthermore, the claims are procedurally defaulted as "'the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Baker*, 220 F.3d at 288 (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

Wilkerson has not demonstrated sufficient cause or prejudice for the procedural default, and he has not shown how failure to review these claims will result in a fundamental miscarriage of justice. Therefore, procedural default bars federal merits review and the Court recommends that grounds 1(b), 2(a), and 2(c) be DISMISSED.

12

## 2.    Ground 1(a) is Procedurally Defaulted and Lacks Merit

In ground 1(a), Wilkerson asserts the "trial court lacked jurisdiction and/or venue over the subject matter of the place where the August 4, 2011 alleged crime occurred." ECF No. 49 at 17, 35.  Wilkerson argues the drug transaction took place on Jefferson Davis Highway in Richmond, Virginia, "8 tenth[s] of a mile outside Chesterfield County." *Id.* at 17.  As a result, Wilkerson asserts the trial court was without territorial jurisdiction and the case should be considered "*void ab initio*, [] without effect." ECF No. 49 at 2.  Wilkerson attaches an excerpt from his trial transcript reflecting his counsel cross-examining the cooperating witness, David Jackson, about the location of the August 4, 2011 crime.  Tr. 91, ECF No. 49 at 42.  In the excerpt, Jackson testifies that the Wendy's restaurant where the crime occurred was located in Richmond.  *Id.*

Wilkerson's claim that the trial court lacked jurisdiction or venue is procedurally defaulted.  The Supreme Court of Virginia held that Wilkerson's claim raised an issue of venue, and not jurisdiction.[5]  State Hab. Op. 2.  The court held the issue was not cognizable in a petition for a writ of habeas corpus because Wilkerson could have raised this non-jurisdictional claim during the direct appeal process.  *Id.* (citing *Slayton*, 205 S.E.2d at 682).  The application of the rule specified in *Slayton* constitutes an adequate and independent state law bar.  *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997) ("We have held on numerous occasions that the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision.").  Accordingly, Wilkerson's ground 1(a) is procedurally defaulted.

---

[5] Section 19.2-244 of the Virginia Code, entitled "Venue in general," provides:

> A.  Except as otherwise provided by law, the prosecution of a criminal case shall be had in the county or city in which the offense was committed. Except as to motions for a change of venue, all other questions of venue must be raised before verdict in cases tried by a jury and before the finding of guilty in cases tried by the court without a jury.

Wilkerson has alleged his counsel was ineffective for failing to properly object to the alleged lack of jurisdiction.   ECF No. 49 at 3.   Although ineffective assistance of counsel may, if proven, constitute cause for a default, *see Carrier*, 477 U.S. at 488, where, as here, the ineffective assistance claim is also defaulted, a petitioner must establish cause and prejudice to raise that claim.   *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).   Wilkerson has not demonstrated cause and prejudice for the defaulted ineffective assistance of counsel claim.   Moreover, the facts before the Court indicate that the argument that the trial court lacked jurisdiction and venue is without merit, and the Court will address the petition on the merits.   *See Bacon v. Lee*, 225 F.3d 470, 477 (4th Cir. 2000) (holding the court may address the merits of a claim that may be procedurally defaulted, if it ultimately finds the claim meritless).

Virginia Code § 19.2-250(B) provides:

> Notwithstanding any other provision of this article, the jurisdiction of the authorities of Chesterfield County and Henrico County, in criminal cases involving offenses against the Commonwealth, shall extend one mile beyond the limits of such county into the City of Richmond.

Detectives Humphries and Kline both testified that the Wendy's where Wilkerson sold drugs to Jackson, on August 4, 2011, was located in the City of Richmond, two-tenths of a mile from the Chesterfield County line.   Tr. at 95, 101–103, 123, 141–42.[6]   As a result, the Circuit Court for Chesterfield County had jurisdiction over the crime committed at the Wendy's restaurant, and venue was proper.   Accordingly, Wilkerson's ground 1(a), which alleges that the trial court lacked jurisdiction and venue over the August 4, 2011 drug transaction, should be DISMISSED.

---

[6] Wilkerson's counsel challenged venue in his motion to strike, arguing that the detectives' method of measuring the distance between the Chesterfield County line and the location of the crime was not sufficiently reliable to establish jurisdiction.   Tr. 166–67.   The trial court denied counsel's motion to strike.   Tr. at 168.

14

**B.    Deference to State Court Decisions**

When a claim has been properly exhausted and adjudicated on the merits in state court, this

Court assesses the state court adjudication pursuant to 28 U.S.C. § 2254(d), rather than reviewing

the merits of such a claim *de novo*.   Section 2254(d) provides that a federal court may not grant

relief on any claim that was adjudicated on its merits in state court, unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" clearly established federal law when a state court

applies a rule different from the governing law articulated by the Supreme Court or arrives at a

conclusion opposite that of the Supreme Court on materially indistinguishable facts.   *Bell v.

Cone*, 535 U.S. 685, 694 (2002) (citation omitted); *Williams v. Taylor*, 529 U.S. 362, 412–13

(2000).   A state court decision constitutes an "unreasonable application" of federal law when the

court identifies the correct governing legal principle from the decisions of the Supreme Court, but

unreasonably applies that principle to the facts of the case.   *Williams*, 529 U.S. at 413; *Lockyer v.

Andrade*, 538 U.S. 63, 75 (2003) (stating that an unreasonable "application of clearly established

law must be objectively unreasonable," rather than simply "incorrect or erroneous").   Stated

another way, a "prisoner must show that the state court's ruling on the claim being presented in

federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."   *Harrington

v. Richter*, 562 U.S. 86, 103 (2011).   Pursuant to this deferential standard of review, "state-court

judgments must be upheld unless, after the closest examination of the state-court judgment, a

15

federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 389.

C.     **Standard of Review for Ineffective Assistance of Counsel Claims**

To review a claim of ineffective assistance of counsel, the Court must apply "a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, __ U.S. __, 134 S. Ct. 10, 13 (2013) (quotation omitted). The applicable standard set forth in *Strickland v. Washington*. 466 U.S. 668, 687–700 (1984), requires a petitioner to show that his defense counsel provided assistance that (1) fell below an objective standard of reasonableness and (2) prejudiced petitioner as a result. To establish that counsel's performance fell below an objective standard of reasonableness, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In doing so, petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This requires petitioner to establish "probability sufficient to undermine confidence in the outcome," rather than a mere showing that "the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693–94. Because petitioner presents these claims in a petition for federal habeas review under section 2254, he must show that the state court's dismissal of his ineffective assistance of counsel claims was contrary to, or an unreasonable application of, the *Strickland* standard. 28 U.S.C. § 2254(d).

### D.    Review of Grounds 2(b), 3, and 4

#### 1.    Ground 2(b) -- Alleging Ineffective Assistance of Counsel Due to Counsel's Failure to Proffer a Jury Instruction Regarding Informant Testimony

In ground 2(b), Wilkerson asserts that his counsel was ineffective for failing to request a jury instruction regarding informant testimony. ECF No. 49 at 4. Wilkerson argues that a reasonable attorney would have requested an informant instruction because there was no corroborating evidence for the informant's claim that he was buying cocaine base from Wilkerson. *Id.* at 5. Wilkerson states that his counsel's strategy focused on discrediting the Commonwealth's witnesses, and counsel cross-examined the informant about the consideration received in return for his testimony. *Id.* at 5–6. Wilkerson argues his counsel's performance fell below an objective standard of reasonableness due to counsel's "failing to complete the strategy and request an informant instruction." *Id.* at 6. Wilkerson further asserts that, if counsel had requested an informant instruction, the trial court should have given the instruction, especially considering the informant's lengthy criminal record. *Id.* at 7, 58 (informant's criminal record).

The Supreme Court of Virginia held that this claim,

> satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[T]he law of this Commonwealth does not require a fact finder to give different consideration to the testimony of a government informant than to the testimony of other witnesses." *Lovitt v. Warden*, 266 Va. 216, 252, 585 S.E.2d 801, 822 (2003). In addition, the record, including the trial transcript, demonstrates the jury was properly instructed regarding its duty to determine the credibility of the witnesses. Furthermore, counsel focused on the informant's criminal record and motivations for testifying against petitioner during the informant's cross-examination, and the jury was instructed that it could consider a witness' prior felony convictions and crimes of moral turpitude. Under the circumstances, counsel could reasonably have determined requesting an instruction on the credibility of informant witnesses was unnecessary. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

State Hab. Op. 1–2. The court relied upon a previous decision, *Lovitt*, where the court held that

17

counsel was not ineffective for failing to "request a jury instruction regarding the 'credibility of jailhouse informants,'" because "the law of this Commonwealth does not require a fact finder to give different consideration to the testimony of a government informant than to the testimony of other witnesses." *Lovitt v. Warden*, 585 S.E.2d 801, 822 (Va. 2003).

Although Wilkerson's counsel did not request a jury instruction specifically addressing confidential informants, counsel did raise the issue of Jackson's lack of credibility and motives for testifying throughout Wilkerson's trial. During opening arguments, counsel described Jackson as a "lifetime career criminal," a "professional criminal," and an "eight-time convicted felon" who "knows how to use the system to try to get himself out of trouble." Tr. 76–77. Counsel explained that Jackson had felony charges pending at the time of Wilkerson's trial, and "he's trying to get out from under it." Tr. 78. Counsel further advised the jury that,

> the evidence will show that [Jackson's] hoped-for consideration will amply explain why he's here today, why he is saying whatever it is he's going to say. It is not because he's being truthful, but because he wants to get himself out of the mess that he's in.

Tr. 78. During cross-examination, counsel had Jackson discuss his drug addiction and acknowledge the offenses contained in his lengthy criminal record. Tr. 85–90. Counsel also cross-examined Jackson regarding the criminal charges pending when he agreed to assist the police with Wilkerson's controlled buy, new charges arising after he assisted the police, and charges pending at the time of Wilkerson's trial. Tr. 84, 86–87. Jackson admitted on cross-examination that his reason for assisting the police with the controlled buy from Wilkerson was his desire to "save [his] own butt." Tr. 84–85.

The jury instructions given at the close of the evidence included two general instructions regarding judging witness credibility:

18

You may consider the appearance and the manner of each witness on the stand, their intelligence, their opportunity for knowing and for having observed the things about which they testified, their interest in the outcome of the case, their bias, and if any have been shown, their prior inconsistent statements or whether they have knowingly testified untruthfully as to any material fact in the case.   You may not arbitrarily disregard believable testimony of a witness.   However, after you have considered all of the evidence in this case, then you may accept or discard all or part of the testimony of a witness as you think proper.   You are entitled to use your common sense in judging any testimony.   From these things and all other circumstances of the case, you may determine which witnesses are more believable and weigh their testimony accordingly.
. . .
You may consider proof of a witness's prior conviction of a felony or of a misdemeanor involving lying, cheating, or stealing as affecting his or her credibility, but it does not render him or her incompetent to testify.

Tr. 195–96, 197–98.

During closing argument, counsel again addressed Jackson's lack of credibility by stating,

can you really believe Mr. Jackson? That's like the glaring 800 pound gorilla in the room.   Can you believe him?   I don't think you can.   He wouldn't know a true fact if it hit him over the head.   He quite frankly said yes, I'm trying to save my own butt.   Now, he has every reason to.   He's been committing crimes since 1983, clear up until last year.

Tr. 211; *see also* Tr. 216 ("I don't think I believe Mr. Jackson").   Counsel clearly made the jury aware of the credibility issues surrounding Jackson's testimony, including his motivation for helping the police and testifying at Wilkerson's trial.

Moreover, Wilkerson's assertion that "[t]here was literally no corroborating evidence for the informant's claims that he was buying cocaine base from Wilkerson" is incorrect.   *See* ECF No. 49 at 5.   Both Detectives Humphries and Kline corroborated Jackson's testimony regarding his purchase of drugs from Wilkerson.   Tr. 96–97, 103–08, 123–24, 140.

Given the holding in *Lovitt*, the jury instructions presented to the jury regarding its duty to determine the credibility of the witnesses, and counsel's thorough attack on Jackson's credibility during opening statements, cross-examination, and closing, Wilkerson has failed to show

19

counsel's performance was deficient. Further, Wilkerson cannot show that, had counsel proffered a jury instruction regarding informant testimony, the result of his trial would have been different. Wilkerson has failed to show that the Supreme Court of Virginia's dismissal of his claim that counsel was ineffective for failing to request a jury instruction regarding informant testimony was contrary to, or constituted an unreasonable application of, the *Strickland* standard, and ground 2(b) should be DISMISSED.

## 2. Ground 3 -- Alleging the Trial Court Violated Wilkerson's Right to Counsel of His Choice by Denying His Motion for a Continuance

In ground 3, Wilkerson asserts the trial court denied him his fundamental right to counsel. ECF No. 49 at 20. Wilkerson states that, because he "did not feel comfortable with" counsel, he requested a continuance to hire the counsel he desired, but the trial court denied his motion for a continuance. *Id.*

The right to counsel guaranteed by the Sixth Amendment includes "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez–Lopez,* 548 U.S. 140, 144 (2006) (citing *Wheat v. United States,* 486 U.S. 153, 159 (1988)). However, a defendant's right to counsel of his choice is not absolute and "'is circumscribed in several important respects.'" *Id.* at 144 (quoting *Wheat,* 486 U.S. at 159). "The limit of the right is necessarily found in the countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of 'assembling the witnesses, lawyers, and jurors at the same place at the same time.'" *Sampley v. Atty. Gen. of N.C.*, 786 F.2d 610, 613 (4th Cir. 1986) (citing *Morris v. Slappy*, 471 U.S. 1, 11 (1983)).

Defendants are not entitled to a continuance of their trial each time they are unsatisfied with their current counsel. "Obviously a defendant has no constitutional right to dictate the time,

20

if ever, at which he is willing to be tried by simply . . . objecting that counsel then retained or assigned is not presently 'counsel of his choice.'" *Sampley,* 786 F.2d at 613 (internal citations omitted); *see also Brailey v. Hinkle*, No. 3:12cv167, 2013 WL 1155563, at *7 (E.D. Va. Mar. 19, 2013). Moreover, in light of the "fact-specific conflicts between individual rights and state interests" presented by requests for continuances, "trial courts must be accorded wide discretion in determining whether to grant continuances." *Sampley,* 786 F.2d at 613. "[T]hat discretion only exceeds its constitutional bounds when it is exercised to deny a continuance on the basis of an 'unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" *Id.* (quoting *Morris,* 461 U.S. at 11–12). To determine whether a trial court has abused its discretion in denying a continuance, reviewing courts must look to the circumstances of each case, particularly the reasons presented to the trial court at the time the request is denied. *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964).

Wilkerson was arraigned prior to his trial on March 11, 2013. Tr. 6–12. Wilkerson indicated that he fully understood the charges against him; that he had sufficient time to discuss with his lawyer the facts related to the charges, the elements of proof, and any possible defense; and that he was ready for trial. Tr. 9–11. However, prior to the start of the trial that same day, defense counsel, at Wilkerson's request, moved for a continuance so that Wilkerson could obtain new counsel. Tr. 18. Wilkerson indicated that he had "some questions that need to be answered," and that he and his counsel "haven't really c[o]me together on what's going on with this case." Tr. 18. The prosecutor outlined the procedural background of the case, including two previous trial dates on which Wilkerson moved to continue the case, and the fact that the witnesses had been subpoenaed "on multiple occasions." Tr. 19–20. The prosecutor indicated that she had been in contact with Wilkerson's counsel since early September 2012, that they had

21

communicated by phone, e-mail, and in person, and that they were prepared to try the case.   Tr. 19–20.   Wilkerson responded that he had not consulted with counsel "the way that I should have," and that "[t]here's a whole lot that is pushed under the rug, has not been said and not been looked at.   And I need somebody who is gonna look at that and represent me the way that they should." Tr. 20.

Wilkerson's counsel indicated that he had met with Wilkerson "at least eight times in extensive meetings" and he was ready to try the case, but that he supported Wilkerson's motion for a continuance and new counsel.   Tr. 20–21.   Following a recess, counsel indicated that Wilkerson did not fully understand certain evidentiary questions and issues of proof, despite counsel's discussions, and counsel asked the judge to "consider strongly letting him continue the case."   Tr. 22.   The trial judge asked Wilkerson what he did not understand, and stated he needed a concrete reason for why the case needed to be continued.   Tr. 23.   Wilkerson answered that he still had questions, but was unable to articulate any specific question.   Tr. 23–25.   Wilkerson indicated that he argued with his counsel and that they were not "at agreement on some of the questions that needed to be asked," and "[s]ome of the things that [were] done," and they "haven't really c[o]me together as one."   Tr. 24–25.

In light of the previous continuances, the fact that Wilkerson had ample opportunity to retain counsel, and the fact that Wilkerson had retained competent counsel who was prepared to go forward with the trial, the trial judge denied the motion for a continuance to obtain new counsel. Tr. 25–26.

Addressing this claim on direct appeal, the Court of Appeals of Virginia discussed an accused's fundamental right to be represented by counsel.[7]   *Wilkerson v. Commonwealth*, Record

---

[7] Wilkerson argued, in both his direct appeal and habeas petition to the Supreme Court of Virginia,

No. 1994-13-2 (Va. Ct. App. Apr. 23, 2014) (citing *United States v. Cronic*, 466 U.S. 648, 653

(1984); *Paris v. Commonwealth*, 389 S.E.2d 718, 721 (Va. Ct. App. 1990); *Thacker v. Slayton*,

375 F. Supp. 1332, 1335–36 (E.D. Va. 1974)); ECF No. 57-2 at 3–4.   The court further noted that,

"[t]his right is only a qualified right, however, and the opportunity guaranteed to a defendant to

secure counsel of his choice is only 'a fair one;'" and "[t]he limit of the right is necessarily found in

the countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious

basis." *Wilkerson*, Record No. 1994-13-2 at 4 (citing *Paris*, 389 S.E.2d at 721 (quoting *Sampley*,

786 F.2d at 612–13)).   Applying this precedent to Wilkerson's claim, the court held,

> [i]n the present matter, [Wilkerson's] case had been pending before the trial court
> for over nine months when the trial court denied his motion for a continuance to
> obtain new counsel.  *See Paris*, 9 Va. App. at 460, 389 S.E.2d at 722 (holding that
> a trial court did not abuse its discretion in denying a defendant's motion for a
> continuance to obtain new counsel when the case had been pending before the trial
> court for ten months).  During this time, [Wilkerson] received two continuances
> and had been represented by two attorneys.  Consequently, [Wilkerson] was
> afforded more than a fair opportunity to obtain counsel of his choosing, and there
> was no want of cooperation on the part of the trial court in allowing [Wilkerson] to
> do so.  Accordingly, the trial court did not abuse its discretion, and [Wilkerson's]
> rights under the Sixth Amendment were not violated, when it denied [Wilkerson's]
> motion.

*Wilkerson*, Record No. 1994-13-2 at 4.

---

that the trial court erred in denying him a continuance and counsel of his choice, and the claim was
summarily denied in both instances.  *Wilkerson v. Commonwealth*, Record No. 141138 (Va. Jan.
21, 2015), ECF No. 57-4; State Hab. Op. 2 (citing *Henry v. Warden*, 576 S.E.2d 495, 496 (Va.
2003), and holding that the claim was "barred because these issues were raised and decided in the
trial court and on direct appeal from the criminal conviction, and therefore, they cannot be raised in
a habeas corpus petition.").   A rejection of a claim by the Supreme Court of Virginia is "no less an
'adjudication' of the merits of the claim and must be reviewed under the deferential provisions of
§ 2254(d)(1)."  *Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000).   Therefore, the Court may
assess, under the same deferential standard of 28 U.S.C. § 2254, the rationale of the lower state
court opinion upon which the Supreme Court of Virginia relied in rejecting petitioner's appeal.
*See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).   The last reasoned opinion on this issue was
the Court of Appeals of Virginia's opinion on Wilkerson's direct appeal.   *Wilkerson v.
Commonwealth*, Record No. 1994-13-2 (Va. Ct. App. Apr. 23, 2014).

The trial court had previously granted Wilkerson's motion to substitute counsel, as well as two motions to continue the case made on days he was scheduled to be tried.[8]   On March 11, 2013, the trial court denied Wilkerson's third motion for a continuance.   On that date, the Commonwealth's witnesses were present; the jury was present; and Wilkerson had counsel present and ready to defend his case.   Wilkerson was unable to articulate any concrete reason for needing new counsel or a continuance.   Under these circumstances, Wilkerson was "given a fair opportunity to secure counsel."   *See Sampley*, 786 F.2d at 614.   The denial of Wilkerson's third motion for a continuance made on the day Wilkerson was scheduled for trial was not "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay."   *Id.* at 615 (quotations omitted) (citing *Morris*, 461 U.S. at 11–12).   Therefore, Wilkerson's ground 3, alleging the trial court denied him his fundamental right to counsel of his choice, should be DISMISSED because the ruling of the Court of Appeals of Virginia was neither contrary to, nor involved an unreasonable application of, clearly established federal law and was premised upon a reasonable determination of the facts.

### 3.   Ground 4 -- Alleging Counsel was Ineffective for Failing to File a Motion to Suppress

In ground 4, Wilkerson asserts counsel was ineffective due to his failure to file a motion to suppress evidence obtained following the unlawful seizure of Wilkerson's vehicle pursuant to an invalid seizure warrant issued in a civil forfeiture case.   ECF No. 49 at 7, 22.

---

[8] On August 21, 2012, the trial court granted Wilkerson's request to substitute Reuben V. Greene, Esq., for counsel of record in place of Jason Anthony, Esq.   On Wilkerson's original trial date, September 4, 2012, the Court granted his motion for a continuance, and the case was continued to December 11, 2012.   On December 11, 2012, the case was again continued on defendant's motion to March 11, 2013.   The trial court denied Wilkerson's motions to continue and to obtain new counsel on March 11, 2013, and Wilkerson's jury trial was held.   Tr. 18–26.

The Supreme Court of Virginia dismissed Wilkerson's claim finding Wilkerson asserted "conclusions or opinions without providing factual support," due to Wilkerson's failure to "articulate how the seizure information was defective, identify what evidence was seized, or state the legal basis for suppressing the evidence." State Hab. Op. 2 (citing *Penn v. Smyth*, 49 S.E.2d 600, 601 (Va. 1948) (holding a habeas petition must allege facts, and that opinions and conclusions will not suffice)).   Although Wilkerson articulated his argument in four pages of his handwritten notarized state petition filed on July 28, 2015, his form petition filed August 7, 2015 merely states "[t]rial counsel was ineffective for failing to file [a] motion to suppress the evidence obtain[ed] from a defective seizure information," without any argument in support. *Wilkerson v. Clarke*, No. 151247 (Va.).   The Supreme Court of Virginia considered the form petition filed August 7, 2015, and the motion to dismiss, when ruling on Wilkerson's petition, but did not reference the July 28, 2015 handwritten petition.   ECF No. 57-5 at 1.

Rule 5:7 of the Rules of the Supreme Court of Virginia contemplates the filing of a notarized petition accompanied by a "memorandum of law citing relevant authorities."   It is unclear whether Rule 5:7 firmly establishes a state procedural rule that precludes the Supreme Court of Virginia from considering a more thorough handwritten petition filed prior to the filing of a form habeas petition. *See McNeill*, 476 F.3d at 211 (holding that a state procedural rule is adequate if it is "regularly or consistently applied by the state courts").   The Court has determined that ground 4 of the petition, in which Wilkerson alleges his counsel was ineffective for failure to file a motion to suppress, is without merit, and the Court will address the petition on the merits rather than dismissing on the grounds of procedural default. *See Bacon*, 225 F.3d at 477 (holding the court may address the merits of a claim that may be procedurally defaulted, if it ultimately finds the claim meritless).

25

Virginia Code § 19.2-386.22, entitled "Seizure of property used in connection with or derived from illegal drug transactions," provides for the lawful seizure of motor vehicles:

> used in substantial connection with (a) the illegal manufacture, sale or distribution of controlled substances or possession with intent to sell or distribute controlled substances in violation of § 18.2-248, (b) the sale or distribution of marijuana or possession with intent to distribute marijuana in violation of subdivisions (a)(2), (3) and (c) of § 18.2-248.1, or (c) a drug-related offense in violation of § 18.2-474.1.

Detective Humphries requested a seizure warrant from the "forfeiture coordinator" for Wilkerson's vehicle "due to the vehicle being utilized for drug trafficking." Tr. 100. On March 6, 2012, the Assistant Commonwealth's Attorney instituted a civil asset forfeiture proceeding against the vehicle by filing an information in the Circuit Court for Chesterfield County. Ex. E to Mot. to Dismiss State Pet. This information recited that, "[o]n August 4, 2011, the Chesterfield County Police developed cause to believe that said property was used in substantial connection with or were proceeds derived from the felony distribution of marijuana in violation of Section 18.2-248.1 of the Code of Virginia." *Id.* Following the filing of the information, on March 6, 2012, the Clerk of Court issued a seizure warrant for Wilkerson's vehicle. *Id.*

On March 7, 2012, Detective Humphries saw Wilkerson driving the vehicle to a Shell gas station. Tr. 100, 111–12. Detective Humphries contacted Detective Kline to assist with executing the seizure warrant, and Detective Kline arrived after Wilkerson had parked at the gas station. Tr. 142. Detective Kline testified that the vehicle at the gas station "was consistent with" the vehicle driven by Wilkerson on August 4, 2011. Tr. 125. Detective Humphries followed Wilkerson into the gas station, explained that he had a seizure warrant for the vehicle, and asked for the keys, which Wilkerson handed him. Tr. 100–01, 111–12, 125. Detective Kline testified that it was standard procedure to conduct an inventory search of a vehicle prior to seizing the vehicle. Tr. 125–26. While Detective Humphries continued to talk with Wilkerson,

26

Detective Kline conducted the inventory search of the vehicle.  Tr. 125–26.  In addition to some personal effects, Detective Kline located three small bags of marijuana inside an empty cigarette pack in the sunglass compartment, and three bags of suspected crack cocaine and half of an Oxycodone pill inside the center console.  Tr. 125–26.

After finding drugs in the car, Detective Kline decided to arrest Wilkerson, who was standing nearby.  Tr. 128.  As the detectives began to take Wilkerson into custody, Wilkerson reached into his right pocket and pulled out a bag containing twelve pills, later determined to be Oxycodone.  Tr. 114, 128–29, Commonwealth's Ex. 4 (Certificate of Analysis).  Detective Kline then placed Wilkerson into custody.  Tr. 128.

On October 16, 2012, the Assistant Commonwealth's Attorney filed an amended information indicating that, "[o]n August 4, 2011, the Chesterfield County Police developed cause to believe that said property was used in substantial connection with or were proceeds derived from the felony distribution of **narcotics** in violation of Section **18.2-248** of the Code of Virginia." Ex. E to Mot. to Dismiss State Pet. (emphasis added).  This amended information corrected the reference to marijuana because the August 2011 transaction giving rise to the forfeiture action was Wilkerson's sale of cocaine, rather than marijuana, to Jackson.

During the cross-examination of Detective Humphries, Wilkerson's trial counsel attempted to inquire about the amendment of the forfeiture information and to relate this to the defense attack on Jackson's reliability, but the trial court sustained the Commonwealth's objections as to the relevance of the civil asset forfeiture proceeding and the defense's failure to timely move before trial to suppress evidence seized on March 7, 2012.  Tr. 115–18.  The Court of Appeals of Virginia affirmed the ruling of the trial court, stating

> [b]y failing to file a motion to suppress, [Wilkerson] waived his right to challenge
> the validity of the seizure warrant.  Thus, the trial court appropriately sustained the

27

Commonwealth's objection when [Wilkerson's] trial counsel attempted to question witnesses, at trial, regarding the evidence upon which probable cause was established to obtain the seizure warrant.

*Wilkerson v. Commonwealth*, Record No. 1994-13-2 (Va. Ct. App. Apr. 23, 2014), ECF No. 57-2 at 8.

The evidence obtained in conjunction with the seizure of Wilkerson's vehicle and Wilkerson's arrest was introduced during his trial.   Tr. 125–27, 130–31.   The jury found Wilkerson guilty of possession of cocaine, Oxycodone, and marijuana on March 7, 2012, the date of the vehicle seizure, and the court sentenced Wilkerson to twelve months and fines for these convictions.   *See* Sentencing Order, ECF No. 57-1.

In his federal habeas petition, Wilkerson argues that the police knowingly used a defective seizure warrant, which was invalid on its face, to take his vehicle and to obtain evidence against him even though "the Commonwealth had **no reason** to believe that [Wilkerson's] vehicle had any illegal contr[a]band in it."   ECF No. 49 at 7–9, 22 (emphasis added).   Wilkerson argues that the initial criminal information, filed March 6, 2012, indicated the vehicle was used in connection with felony distribution of marijuana, and was amended to correct the reference to marijuana on October 16, 2012, outside the 90 day statutory requirement.[10]   ECF No. 49 at 32, 37–38. According to Wilkerson, the Commonwealth returned the vehicle and admitted that the seizure warrant was invalid, but only after his criminal trial.[11]   *Id.* at 9.   Wilkerson has submitted an

---

[10] Virginia Code § 19.2-386.3(A) provides that, "[w]hen property has been seized under Chapter 22.2 . . . prior to filing an information, then an information against that property shall be filed within 90 days of the date of seizure or the property shall be released to the owner or lien holder." Because police seized Wilkerson's vehicle on March 7, 2012, *after* the filing of an information on March 6, 2012, this provision has no application to this case.

[11] Wilkerson notes, "without construing this to be a separate and additional ground only to be viewed as a point of reference," that if counsel had been appointed in the civil proceeding, counsel would have moved to quash the improper seizure.   ECF No. 49 at 11.   Further, because the civil

August 12, 2015 order from the Circuit Court of the County of Chesterfield, ordering the civil forfeiture matter non-suited, and releasing the property to Wilkerson or his designee. *See id.* at 59. Nothing in that court order or the record, however, indicates the reason for the non-suit, or contains an admission by the Commonwealth that the seizure warrant was invalid. Lastly, Wilkerson asserts that if counsel had filed a motion to suppress, "there is a strong possibility that the evidence obtained after the seizure of [his] vehicle would have been inadmissible." *Id.* at 22. The Court disagrees.

To the extent that Wilkerson suggests that the Commonwealth needed probable cause to search his vehicle, ECF No. 49 at 7–9, 22 ("the Commonwealth had no reason to believe that . . . [the] vehicle had any illegal contr[a]band in it"), his claim misses the mark because the Commonwealth neither sought nor obtained a warrant to search the vehicle for contraband.   To the contrary, apparently at the request of Detective Humphries, the Commonwealth instituted a civil proceeding to forfeit the vehicle pursuant to Virginia Code § 19.2-386.22, which authorizes the "[s]eizure of property used in connection with or derived from illegal drug transactions." When such property is not seized at the time of the drug transaction (here, August 4, 2011) serving as the predicate for the civil forfeiture, Virginia Code § 19.2-386.2(A) directs "the clerk of the circuit court . . . , upon motion of the attorney for the Commonwealth wherein the information is filed, [to] issue a warrant . . . describing the property named in the complaint and authorizing its immediate seizure."   Accordingly, following the Assistant Commonwealth Attorney's filing of an

---

forfeiture hearing was not to be held until after his criminal trial, Wilkerson asserts he was effectively denied his right to counsel. *Id.* To the extent these allegations create a separate ground for relief, the ground would be simultaneously exhausted and procedurally defaulted as discussed in section III. A. of this report and recommendation.   Wilkerson has not shown cause or prejudice for the procedural default, or that failure to review this claim will result in a fundamental miscarriage of justice.

information and the Clerk of Court's issuance of the seizure warrant for Wilkerson's 2005 Chrysler 300 as property subject to forfeiture, Detectives Humphries and Kline served the seizure warrant on March 7, 2012.

Following the service of the seizure warrant upon Wilkerson, Detective Kline then conducted an inventory search of the vehicle pursuant to the standard operating procedures of his employer. Tr. 125–26. This search did not contravene the Fourth Amendment because a vehicle may be subjected to an inventory search, without probable cause, when police lawfully obtain custody of the vehicle and conduct the search pursuant to established policy designed to protect the owner's property while in police custody, to protect the police against potential claims for lost or stolen property, and to protect the police from danger. *See, e.g. Florida v. Wells*, 495 U.S. 1, 3–5 (1990); *Colorado v. Bertine*, 479 U.S. 367, 371–72 (1987); *United States v. Patterson*, 150 F.3d 382, 386–87 (4th Cir. 1998) (approving inventory search following warrantless seizure of vehicle used to commit crime).

After recovering illegal narcotics from the vehicle, the police also possessed probable cause to arrest Wilkerson and to recover from him the additional drugs that he exposed to them in plain view, *see Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971), and/or that were lawfully seized during a search incident to his arrest, *see Michigan v. DeFillippo*, 443 U.S. 31, 34–35 (1979).

Nor does the misidentification of the narcotics involved in the August 4, 2011 drug transaction in the initial forfeiture information filed by the Assistant Commonwealth's Attorney provide a basis for suppressing the narcotics recovered during the inventory search and Wilkerson's arrest. When asked on cross-examination whether he knew that the initial seizure warrant for the vehicle reportedly indicated that the seizure "was for possession of marijuana,"

30

Detective Humphries stated that he did not know because he did not have a copy of the warrant in front of him and that he read only the part of the warrant with "the license plate . . . and the date." Tr. 114–15. In fact, the seizure warrant contains no reference to marijuana or any other narcotic drug. Ex. E to Mot. to Dismiss State Pet. The record, therefore, contains no information suggesting that Detectives Humphries or Kline knew or should have known of any possible infirmity in the legal process leading to the issuance of the seizure warrant.[12] Thus, even if the misidentification of the narcotics involved in Wilkerson's August 4, 2011 drug transaction could have rendered the seizure warrant invalid, it appears that the police officers' March 7, 2012 encounter with Wilkerson, the ensuing vehicle inventory search, and the seizure of drugs on or about Wilkerson's person, began in "objectively reasonable reliance" upon a facially valid seizure warrant. *See United States v. Leon*, 468 U.S. 897, 922–25 (1984) (Fourth Amendment does not require the suppression of evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant"); *United States v. Gary*, 528 F.3d 324, 328–30 (4th Cir. 2008) (applying good faith exception despite officer's unintended typographical error in warrant affidavit).

Because a motion to suppress would not have been successful, the Court cannot find that Wilkerson's counsel was objectively unreasonable for failing to file the motion, or that the failure to file the motion adversely affected the outcome of Wilkerson's case. Therefore, Wilkerson's ground 4, alleging that counsel was ineffective for failing to file a motion to suppress, should be DISMISSED.

---

[12] Nor does the record contain information indicating that either officer made "a false statement knowingly and intentionally, or with reckless disregard for the truth" in conjunction with the Commonwealth Attorney's request for the seizure warrant. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (addressing the suppression of evidence when false information was included in a warrant affidavit that was essential to the probable cause determination).

## IV.  **RECOMMENDATION**

Based upon the foregoing, the Court RECOMMENDS that the respondent's motion to dismiss (ECF No. 55) be GRANTED, and that Wilkerson's petition for a writ of habeas corpus (ECF No. 49) be DENIED and DISMISSED WITH PREJUDICE.

## V.  **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.   A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.   *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.  A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court

based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
June *19*, 2017

33